We'll hear argument first this morning in No. 2008-1402, Bernardo Footwear v. Dillard's. Mr. Goldstein, you may begin when you're ready. Thank you, Your Honors. I want to thank you all for coming in on a snowy morning also. Let me first introduce from my firm, Wendy Boone of Goldstein, Fawcett & Preveg, and from the client, Mr. Trey Smith, the principal of Bernardo Footwear. Good morning. I think this is a rather interesting and unique situation that we have here because we have a situation where we have a pre-Egyptian goddess claim construction and a post-Egyptian goddess appeal. So the issue is how should this court now handle the claim construction from the district court in light of Egyptian goddess? Bernardo first appeals from the district court's final judgment of non-infringement of its 447 design patent directed to a sandal based on the underlying error of the district court in the claim construction or markman ruling. Of course, as I said, the district court did not have the benefit of this body's decision and directions in Egyptian goddess. The second issue here on appeal is the district court's partial summary judgment that Bernardo failed to comply with the marking statute and thus was entitled to no damages from the plaintiff. Am I understanding your argument is not based on the notion that the dotted lines are environmental but rather functional? That is correct, Your Honor. Below you argued they were environmental. They are distinctive and descriptive of the design, but they are primarily functional. But I didn't see any argument below indicating that they were functional. And I went back through all the documents, even the ones not in your brief. So I'm just trying to understand whether this is a new argument on appeal for the first time, which might be problematic for you. That would be problematic, Your Honor, but I don't believe it is a new argument. Tell me where it appeared below. You can do it. You can do it. Let her look and we'll just keep going in the meantime. Okay, so you now have let go of the environmental issue. That's no longer part of this appeal. You're not arguing those dashed lines are environmental in the sense of the MPEP use of the word environmental, but rather functional. Our position is that the dotted lines, as you call them, or the stitching that holds the sole and the cushioning together. This is not a product that is glued together, but a product that is stitched. As many shoes are, these sandals are stitched. That the stitching is functional. It is not any kind of unique stitching. It's just a straight line stitching. It doesn't have any real distinctiveness, and I think the ordinary observer looking at the sandal would understand that the stitching is primarily there functionally to hold the sole and the cushioning together. Apart from the possible waiver issue, on the functionality argument, isn't our precedent clear that considerations of functionality are directed to the design as a whole, not to individual features? Also, where there are any number of different ways in which to accomplish a function, a particular way to accomplish that function generally is viewed as not entirely functional. Don't you have really two problems? One, that you need to look at the design as a whole, not to this particular feature. And two, that there are any number of different ways in which these soles can be held together, which suggests that the stitching is not entirely functional or primarily functional. Your Honor, I'm not familiar with the law you're expressing about the functionality being of the design as a whole. In my view and my understanding is that you have to look at each feature, determine whether that feature is a functional feature or an ornamental feature of the design. I think that's the distinction that the cases make between things that are ornamental and things that are functional. Now, a design can't be totally ornamental. I guess it could be, but most designs are products that have some function. So, this sandal obviously has a function, but the stitching itself could be any other form of stitching. It doesn't have to be a straight line stitching. It could be a cross stitching. They could be hammered together. They could be glued together. So, I think the particular form of placing the sole and the cushion together, the stitching, is in fact a functional aspect of the sandal and not particularly ornamental. The case I was referring to is PHG Technologies LLC v. St. John, 469 Fed 3rd, 1361. It says, quote, The determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on analysis of its overall appearance. Close quote. Quoting another case, Barry Sterling v. Pescor, 122 Fed 3rd, 1452. I think, Your Honor, what that quote refers to is the fact of whether or not a particular design is in fact patentable as a design patent, whether there are any ornamental features or whether it is just a design that's dictated by its function. And I'm not sure that the Egyptian goddess was one that was particularly ornamental. But in this particular situation with this sandal, there are so many different ways that a sandal can be shown, can be designed, that obviously a sandal is a product that has ornamental features. And in this particular case, we assert that the ornamental features are the particular knot, the particular fitted ring, and the particular straps that hold the ring to the base of the sandal. Those are features, if you would look at sandals as a whole, in fact my client's website probably has hundreds of different sandals. So the design of the sandal is not dictated by the function of the product. The design of the sandal is dictated by the ornamentation that one places on the sandal. And that's why we believe we have a very valid and enforceable design patent. I think if you look at Appellant's initial brief at pages 6 and 7, you'll see why we're basically here today. And on those pages, starting in the middle of page 7 and 8, starting in the middle of page 7, you'll see that the court, without the advantage of the direction given by this body in Egyptian goddess, went off and defined a sandal, a simple sandal, in terms of five separate paragraphs, basically reciting every nook and cranny of the sandal, reciting things which we deem to be functional, and reciting them in such minutia that it's really not understandable to anybody. In fact, the district court defined the relationship of the heel to being approximately one-half the thickness of the sole. Let me make sure I understand the functional argument, because I think that Judge Lynn's question resonated with me a little bit, because I saw the same thing in our LA Gear case. The language that suggests, for purposes of determining functionality or ornamentality, it's not a question of looking at each element and saying, well, this element appears to be functional, therefore it's not part of the design. This element appears to be purely ornamental, therefore it is the design. That seems to me to amount to parsing a design quite substantially, because an awful lot could be said to be functional, right? The overall shape of the sandal, which of course mimics the shape of one's foot, the fact that you need straps where you do, or one between the toe, all therefore, if you didn't have them, you wouldn't be able to actually hold the sandal onto your foot. It just seems that if we sit down and start parsing by anything that could arguably have or serve a function, that we would be going down a road that made it very difficult for us, and for lower courts, to figure out which are the design aspects that are protectable and which ones aren't. So I had kind of understood our case law also as suggesting that functionality was something you looked at with regard to overall design, not a parsing of elements. So tell me why you think that we ought to do it on a parsing of elements approach, which seems to be what you're advocating. Well, I think that's what the lower court did, actually. And I'm not advocating that. I think they took every feature, functional or ornamental, and wrote them in the 5 paragraphs on pages 7 and 8 of the appellant's brief. My understanding of the law that the 2 justices have referred to is that there are some products that by their very nature, by their very shape, define their utility. And those products are not subject or can't be subject of a proper design patent. The very shape of the product defines the utility of the product, such as perhaps this cup. On the other hand... Doesn't the shape of a sandal or a shoe define its function? And if you're talking in general terms like that, that's what shoes and sandals are for, to protect your feet. Yes, but there can be many, many different shapes, sizes, details, and ornamentation applied to the sandal. We don't have a design patent. Isn't the same true for the stitching? There are any number of different ways in which to attach the sole to a shoe or a sandal. It could be glued, it could be stitched in a certain way, it could be stitched in a different way, in a number of different ways, which suggests, does it not, that a particular way of doing it is not primarily functional but has ornamental attributes. Well, let me go back to the first part of your comment about a sandal being dictated by trying to be in the form of the shape of the foot. I think that's true, but I don't think that answers the question because we don't have a design patent on any old sandal. We have a design patent on a particular sandal that has particular ornamentation. And that ornamentation are the three items I mentioned earlier. I don't mean to interrupt, but why is the stitching part of that ornamentation? The stitching isn't part of the ornamentation because it's a necessary functional element in order to keep the sole and the cushion together. Take, for example, the fitted ring. It's not necessary apparently in the accused design. That's because they glue it, that's correct. So when you say necessary, it's not necessary in the strict sense of the word. It's not essential. You're absolutely correct, Your Honor. There are different ways that the sole and the cushion can be attached, such as gluing, such as regular shoes where there's tiny little nails or some sort. And you've chosen to show the stitching in the design. So normally one would assume that when you make an election to include particular things in the drawings that are part of the design or that indeed are the design claim, that they are presumptively part of the design. Well, I can't, yes, but we've shown other things that are, we've shown the sole, we've shown the heel, and we don't consider those to be part of the design. If the stitching wasn't part, why would you show the underside, figure 7? Why show it? Why show figure 7 at all? What does figure 7 tell me about the ornamentality of this thing? Is it the heel then? I mean, I'm just wondering what the purpose was of including figure 7 in the patent. It's the bottom side of the shoe. I'll hold mine up for you. I know what it looks like, Your Honor. All right. Why would you include that, though, as part of your claims? Because in most design patents, in fact, probably all design patents, there is a view of the particular product from every potential angle, from the top, from the side, from the bottom. Even if the bottom holds what? I would assume you would tell me no ornamentality because the only thing you can see from the bottom view is that stitching and then the heel. So I'm assuming you're— I would say yes, even where the bottom view doesn't show any ornamentation. For completeness purposes, the design patent application shows all the views from the sides, from the top, from the bottom. You know, I'm a lady, and I sometimes buy sandals. Sometimes I see this stitching, and you know they even make it different colors than the soles because it's meant to be decorative sometimes. So why, given that clearly some manufacturers do believe that there is a value to the decorative, I mean, they'll make it a contrasting color. Why not put the onus on the patentee when he's going to include something like that in the picture, like the MPEP suggestively does, to if you're going to include these dashed lines, you have the obligation. We're going to consider them part of the design unless you, the patentee, who's the one drafting the patent, you have the obligation to make it clear that you don't consider them part of your design. Why not put that onus, as a policy matter, on the patent holder since they have the ability to make it clear? I don't disagree with anything you said, Your Honor. I would only say that in 20-20 hindsight, I wish we had. Yeah, okay. My time is up. We will, however, we've asked you a lot of questions, so we'll restore a couple of minutes of rebuttal time for you if you need it. Thank you, Your Honor. Let's see, Mr. Halpern. May it please the Court. My name is John Palter, and I, along with Patrick Wong and Mr. Ted Riney, represent the Appley Fortune Dynamic Footwear, Inc., in connection with this appeal. By this appeal, we request that this Court affirm the April 28, 2008, judgment, final judgment. Incorporated with that is the January 15, 2008, partial summary judgment on the marking statute. Counsel, did they raise that? I never got an answer. Did they raise the functionality issue below? They did not, Your Honor. Never at any point? It was not raised as a functionality issue, and I wholeheartedly agree with the Court's observation that from a policy standpoint, the MPEP should require that the patentee, in its application, if it is going to include elements that are functional, that it identify that they are not part of the patented design. Because of the risk of confusion, counsel identified that the fundamental issue here is, well, we have a trial court determination on claims construction, but we have a post-Egyptian goddess determination. We cannot think of a better example of this Court's guidance in Egyptian goddess as it relates to claim construction than what the Court did here. That is, that the Court identified those questions of law, such as patent conventions. Were these lines environmental? Were these lines functional? That was a determination of law that should be made in a verbal description, as opposed to what is the preference under Egyptian goddess, which is merely to provide a picture of the shoe. So if the district court considered whether the lines were functional, would you be arguing to me then that you think it is or is not waived for purposes of appeal? It seems that you just acknowledged that it was studied below, whether it was raised by them or of the district court's own imagination. In either event, you suggested the district court outlined a consideration of whether these lines were functional. Two points. First, we believe it has been waived for all purposes. But even if it is not waived, because the court took it into consideration associated with the claims construction, by determining that by including them in the patent, and as this panel is aware, the manual requires that if the broken lines are environmental, they should be no thicker than the surrounding lines and that they should not intersect other areas. In this case, figure 7, the broken lines intersect the heel. And accordingly, they are clearly part of the design. So while this issue was waived at the lower court, we believe it was properly considered by the lower court in this case. Your Honor, the court did not abuse its discretion as it relates to a verbal claims construction in this case. Second, by virtue of their application of the ordinary observer test, the trial court did not render a decision which was clearly erroneous and finally, the partial summary judgment on the marking statute was appropriate as there was no genuine issue of material fact on the issue of whether Bernardo could meet the constructive notice test. I will briefly address the construction, the ordinary observer test, and then the partial summary judgment. There seems to be a dispute between counsel as to what the appropriate standard of review should be for the claims construction. Citing the Cyborg decision, Bernardo asserts that the claim construction should be reviewed by this court de novo. While clearly a question of law exists concerning the construction of a patent, the Cyborg decision related to a utility patent. It was a method patent with a device. The Egyptian goddess decision, when construing a patent relating to a design, said that the trial court should be given some discretion and absent a showing of prejudice, actual prejudice associated with a verbal description, that they would not disturb a trial court's decision to enter a verbal description relating to a design patent. And indeed, it identified several reasons why, several concerns why, a district court might want to include a verbal description. First and foremost of those types of circumstances, including just the need for the trial court and this court of appeals to review the internal reasoning employed by the court in the application of the ordinary observer test. Similar to the construction of obviousness, the trial court has a burden to discern what the reasoning was that arrived at the decision relating to obviousness. Here, the trial court, in its determination as to whether or not certain elements were functional, environmental, needed to record those transactions, record those thought processes, and accordingly, a verbal description in this case was necessary. Second, Egyptian goddess identified alternative areas such as patent conventions, patent prosecution history, and finally, functionality. All of those are necessary reasons for a court to set forth a verbal description. There is no allegation by Bernardo in this case that the verbal description is in any way inaccurate. It describes verbally the sandal. Interestingly, the claims construction submitted by Bernardo in this case, comprised of a ring, a lark's head knot, and wrap straps, would not convey the overall visual impression of a sandal. It simply would be a ring with three straps on it. Because the verbal description provided by the trial court was indeed accurate, and because there has been no showing of any prejudice associated with that verbal description, we believe that the court did not abuse its discretion. So whether this court ultimately adopts a de novo review concerning verbal claims construction in design patents, or whether, consistent with Egyptian goddess, it believes that abuse of discretion with the showing of prejudice is the appropriate standard, with either standard, Fortune's final judgment should be affirmed. Moreover, in this case, the court did apply the Gorman Ordinary Observer Test. After a full trial on the merits before the judge, the court determined that there were significant differences between the accused's design and the claim design, and that the ordinary observer, whether it was, as asserted by Bernardo, the consumer on the street, or as asserted by Fortune, a retail buyer of shoes, that they would not be confused or deceived into believing that they were in fact buying the claim design when they were buying the infringing design. And the court noted significant similarities, the first and foremost of which was the decorative stitching. The court went on to point out that the differences in the toe, a rounded toe versus a more pointed toe, the heel, a square toe versus a rounded heel, the number of straps, three straps resulting in six strands versus two straps resulting in four, the ring being irregular shaped and hammered appearing versus smooth, higher heel versus a lower heel. Notably, the district court found that these differences, both individually and in the aggregate, would make it very clear that the ordinary observer would not confuse these two. Counsel, the district court cited MPEP section 1503.02 and included a quote, which I've had difficulty really locating in the MPEP. The district court seemed to be of the belief that the MPEP said, quote, the specification should make it clear that the structure shown in broken lines is not a part of the design thought to be patented. Does that language actually appear in the MPEP? I could not find that language, although there is some language that's specifically asserted in MPEP 1503.2. I'm there. Go ahead. Tell me what you want me to look for. That where the broken lines are used, which cross over. Where's the exact language? You want me to look at a particular language? I don't have it in front of me. Are you looking at the current version of the MPEP or the one that was in effect at the time of the application in this case? I believe that the court looked at the time of the application. Is that the language that you're going to tell us? That was the language I was asserting at the time that they were relying upon. But you agree that the language they quoted doesn't actually appear in the MPEP? That's correct. I'm just wondering where the district court got it from. You didn't lead them astray, did you? No. But the same considerations are true as to whether or not a verbal claims construction would be appropriate as it relates to whether the stitching itself should be part of the claim design. And for the public policy reasons articulated by this court, we believe that it should. That is, by definition, a design patent only speaks to those ornamental features. And if it was the intent of the patentee in this case to exclude those, there would be absolutely no purpose for including those dotted lines within the patent itself. So I assume that you would hold the belief that you can't parse the design as between functional and ornamental aspects and then say the design that is protected is only the ornamental ones as the appellant would have us do. Correct, Your Honor. So you would say no, we can't disregard for purposes of the claimed design anything at all that appears to be dictated entirely by function. If it's a discrete element, it's only if the overall... I'm trying to get to the bigger legal point, which is, for our purposes, does our precedent indicate that you only consider functionality for the purpose of determining whether the overall design is entirely functional or most dominantly functional rather than ornamental, or can we look at particular elements to determine functionality? I think the court, for purposes of explaining to the jury in its claims construction, whether what they are looking at on the visual drawing is functional and should be included or is merely ornamental, that the trial court should make that determination. So you think it's possible then to parse a claimed design by elements excluding those that are in fact deemed to be functional if the jury makes that factual determination? I do. The Court of the Egyptian Goddess indicated that the trial courts are uniquely qualified to make those legal determinations as to functionality and ornamentation. Here I think there's a bigger policy question because when we look at the design specification, everything concerning that patent is set forth on that specification and the stitching is there. It is our assertion that because the stitching is there, it is not functional. Maybe I misunderstood your answer to Judge Moore, but I thought you were heading down the path of saying that, yes, you could tease apart those features that are functional and those that are not functional, even though those features may be shown in the design as claimed. Are you agreeing with that? We're having difficulty with this issue because at the district court level there was an issue before the judge as to whether you could parse those out. You mean functionality? On functionality. That issue was presented to the court? I'm sorry. The issue of functionality was not presented to the court at the lower case. Okay, now I'm confused. So back up and lay out for us what happened in the district court and what your view is as to the role of functionality in assessing individual elements of a claim. The trial court considered only whether or not the dotted lines were environmental and therefore included a determination in the verbal description that they were not environmental and they were part of the claim. The larger question is, should the trial court have discretion to parse out, had it been presented to the trial court, the dotted lines? And we assert that, yes, I think there is a situation where the trial court in its determination of the claim's construction may be called upon because of a dispute between the parties to identify whether or whether or not there are individual functional elements and whether the jury should be provided an instruction as to whether they should consider individual dotted lines as merely functional. But when you say dotted lines, let's be careful. You're not asserting there are any dotted lines in this case, as I understand it. You are saying that those are stitch marks, not dotted lines. That's correct, that they are stitched. So when you're talking about dotted lines, you're talking about something that, as I understand your case, does not pertain to this case. Correct. All right. And dotted lines aren't, by definition, I think, assuming they're identified as such, part of the design anyway, right? Whether because of functionality or what, they're just part of the environment. They show the rest of the bottle to which the design, which is the top of the bottle, let's say, is attached, right? So I'm having trouble understanding the point you're making about individual elements being functional if they're marked with dotted lines because it's irrelevant whether they're functional or not. They're just not part of the design, right? They are part of the design, and because they are ornamental, they are part of the overall design. That is correct. No, no, they're not part of the design. The dotted line of the rest of the bottle is just to show you what bottles look like so you're not confused. I mean, for example, in this sandal, you could have had everything except the strap, let's say, could have been in dotted lines, in which case it wouldn't matter what the sandals looked like. Everything would be focused on the strap, correct? Correct. And whether it's functional or whether it's… It would not be just to sort of give you an idea of where the strap fits on a generic sandal. So I'm having trouble understanding what you're saying about functionality being pertinent to particular elements as long as they're dotted. My understanding was when you dot, dotted lines, dashed lines, whatever, it's out of the design. It's not part of the claimed design, right? The disagreement was whether you could construe the dotted lines in this case as merely environmental or whether they were intended to be stitching. And therefore, the disagreement we have is whether or not they could be construed. But I agree with the Court that in the normal context, dotted lines are excluded as a matter of course. Your Honor, for those reasons, we do request that this Court affirm the January 15, April 28, 2008 judgment in all things. Thank you, Your Honor. Thank you. Mr. Goldstein, I think we restored two minutes of public time if you'd like to use it. Do you have something for us in response to Judge Moore's question about whether this issue of functionality was preserved below if you've been able to find it? I believe I do, Your Honor. And I've gone back with the trusted help of Wendy Boone and found in the appendix, page A503 through A507, a bench brief that was submitted to the Court below. And it's entitled, Bench Brief in Reference to Broken Lines. So this issue was clearly before the lower court. It is preserved. It's in the appendix. Well, does this bench brief address the question of functionality? It doesn't address it right on, Your Honor, but I think it's there. Where? Tell me. I'm looking at it. It's not very long, so I've just read the entire thing while you were talking. Which sentence of it is it that you think raises functionality as opposed to me construing it as focusing on environmental? Well, in the argument section, Your Honor, it does specifically state that the dashed line of this sandal, right under argument, are not part of the claimed design. Right. And that's pursuant to the paragraph immediately above, I take it, which says that something that is necessary to show the environment in which the design is associated may be represented by broken lines. Correct, Your Honor. And that's environment as opposed to function. Yes. There is a difference there. Let me direct the Court's attention in the time I have remaining to a district court case that came out before Egyptian Goddess, and that's the Lamps Plus case, where I think the judge in the northern district of Texas got it exactly right. And he basically said, citing from Minka case, that's another design patent case, Craftmade's proposed construction, on the other hand, is not recommended because it would, in essence, have the Court giving the jury a parts list along with a description of what those parts separately look like in only the most general terms, without noting the ornamental features that produce the overall appearance of the design. And I think you can read into that, the entirety of that decision and others, that it is only the ornamental features that are covered. So there is this distinction between ornamental and functional distinctions. Okay. Mr. Goldstein, your time has expired. Do you have one more concluding observation? Your Honor, I reserved five minutes for rebuttal. That's right. You used up all of your five minutes during your opening argument, and we gave you two minutes. I thought I used up only ten. I'm sorry. I started at ten. I don't know. We're beyond. I will then wrap up, Your Honor. Very well. And I have wrapped up. Thank you. Case is submitted.